UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER MICHAEL JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:18-CV-02165-JPH-MPB |
| DR. BRYAN BULLER, ROXANNE MANN, DR. ROHANDA, NURSE STACY, and DR. ALEXANDER PLESZYNSKI-PLATZ, | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, Dr. Platz, provides this Memorandum of Law in support of his Motion for Summary Judgment.

   I.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Dr. Platz worked at the Marion County Sheriff's Department as a temporary independent contractor through Alumni Healthcare between June 2018 and September 2018. Affidavit of Alexander Pleszynski-Platz, M.D., ¶3. He was not Mr. Johnson's regular physician, but a temporary locum physician who saw Mr. Johnson only three times, on July 27, 2018, August 3, 2018 and August 20, 2018. Affidavit of Alexander Pleszynski-Platz, M.D., ¶4.

On July 27, 2018, Dr. Platz placed an order for Mr. Johnson to receive Norco for 5 days due to his complaints of pain. Affidavit of Alexander Pleszynski-Platz, M.D., ¶5.

On August 3, 2018, Dr. Platz again saw Mr. Johnson regarding his complaints of pain. Dr. Platz explained to Mr. Johnson that Mr. Johnson should not use opioids long term for his chronic left heel pain due to it being beyond a healing stage after the original gunshot wound. Mr. Johnson accepted that explanation and Dr. Platz ordered Tramadol 50 mg twice daily for five days for

breakthrough pain.  Dr. Platz also advised Mr. Johnson that he could use Tylenol and Ibuprofen for chronic discomfort. Affidavit of Alexander Pleszynski-Platz, M.D., ¶6.

On August 20, 2018, Dr. Platz ordered Gabapentin 300 mg capsule and Ibuprofen 800 mg tablet for Mr. Johnson. Affidavit of Alexander Pleszynski-Platz, M.D., ¶7.

Dr. Platz never treated or saw Mr. Johnson in a clinical setting after August 20, 2018 and has no knowledge of what transpired regarding Mr. Johnson's treatment after August 20, 2018, including whether or not any recommended treatment was approved. Affidavit of Alexander Pleszynski-Platz, M.D., ¶¶8-9.

In his deposition, Mr. Johnson confirmed that his claim against Dr. Platz was predicated on the belief that Dr. Platz failed to prescribe and/or stopped the prescription of pain medication. However, Mr. Johnson also admitted that he had no evidence to support those claims and that some of the claims are contradicted by the records. The entirety of Mr. Johnson's testimony relative to Dr. Platz is as follows:

> "Q   I represent Dr. Platz. I'm not going to take very long. They've asked you all the long questions. I do want to talk about Dr. Platz specifically. Okay?
>
> A   Okay.
>
> Q   Do you know how many times you saw Dr. Platz?
>
> A   A couple.
>
> Q   If the records reflect that you might have seen him maybe three times, does that sound right?
>
> A   Yes.
>
> Q   Once on July 27th, once on August 3rd and once on August 20th, all in 2018?
>
> A   Yes, that sounds about right.

Q      I guess having made reference to the records, you've made reference to the records, would it be a fair statement that if the documents, the medical records, the grievances in this case say one thing but your recollection is different, that the record is more likely to be accurate?

A      Yes.

Q      I think you mentioned that your claim against Dr. Platz was that he refused to give medication on several occasions; is that correct?

A      Yes.

Q      Which medications did he refuse to provide?

A      My nerve medication and pain medication.

Q      Gabapentin and the pain medication?

A      Yes.

Q      Is there a specific pain medication?

A      No. I asked them to give me something for pain. I don't think I was receiving it at that time, anything at all, if I'm not mistaken.

Q      I think we already discussed in your initial questioning that you were receiving the Gabapentin by July 23rd, right?

A      He stopped it. He provided it – she provided it and then he stopped it.

Q      Do you have any records or other evidence to suggest that Dr. Platz is the one who stopped your Gabapentin?

A      Not offhand. I don't have my records with me.

Q      If the records reflect that Dr. Platz continued you on your Gabapentin on August 3rd and then renewed your prescription again for another month on August 20, would you agree the records are probably more accurate?

A      He started them after I went and seen him. What date is renewal?

Q August 3rd and August 20.

A For me to go down there and see them, they had to stop. In that time frame, I had to see him three times within that time frame. So I hadn't been -- so I wasn't receiving them during that timeframe.

Q So you weren't receiving your Gabapentin at that time. Do you have evidence that Dr. Platz is the one who stopped it?

A It was only two medical providers there, Dr. Platz and Burton.

Q Do you have evidence that Dr. Platz is the one who stopped your Gabapentin?

A Not at this moment.

Q The records also reflect that Dr. Platz issued an order for Norco, according to one of your healthcare requests, but that you did not receive it. Do you have a recollection of that?

A No.

Q Then on August 3rd, we've already looked at this record in the big, thick stack; in your record with Dr. Platz, Dr. Platz documents that you accepted the explanation that you should not use opioids for chronic left heel pain and that you did accept Tramadol 50 milligrams twice a day for five days for breakthrough pain. Do you remember that happening?

A Yes, I was prescribed that.

Q That was in addition to using Tylenol, Ibuprofen for chronic discomfort; and you agree that Dr. Platz ordered that on August 3, 2018?

A Yes. Was it anything for my nerve damage on the orders?

Q If the records reflect that that was not an issue at that time with Dr. Platz, would the records be accurate?

A That's been the issue all the time, the full time.

Q So if the records reflect that you were provided with a 30-

|   |   |
|---|---|
|   | day prescription of Gabapentin on July 13, do you dispute that that happened? |
| A | July 13? |
| Q | I think you testified earlier you didn't receive it on the 13th. You didn't receive it until I think you said the 23rd or 26th, but that the prescription was on the 13th. Do you recall that testimony? |
| A | I recall it being mentioned. |
| Q | So if you acknowledge that you were receiving Gabapentin starting on July 23rd or 26th, I didn't write that date down, are you telling me that by August 3rd, you were already not receiving your Gabapentin? |
| A | I don't have my documentation with me. |
| Q | Because the documents are more accurate than your testimony today, we should go on what the documents say? |
| A | I'm not saying that. I mean, I don't have documentation. You have the paperwork; I just don't have my paperwork in front of me as to where I could point out facts. |
| Q | You were there; I wasn't. So I have to rely on the documents, but you were there. Do you have any recollection that between July 23rd and August 8th, that you had started receiving and already stopped receiving Gabapentin? |
| A | No, that wouldn't have been within the 30-day time frame. |
| Q | Right. You do acknowledge that Dr. Platz prescribed you Tramadol for your pain in addition to the Tylenol and Ibuprofen; is that right? |
| A | Okay. |
| Q | When was the last time you saw Dr. Platz? I think we established that it was August 20; does that sound right to you? |
| A | Yes, could be. |
| Q | So all of your treatment from Dr. Platz between July 27 and |

        August 20, and there's no -- you don't have any evidence that you stopped your Gabapentin. You acknowledge that he prescribed you Tylenol, Ibuprofen and Tramadol, and continued on August 20 the order for Gabapentin, correct?

A     Okay.

Q     So what did Dr. Platz do wrong?

A     Did you have the actual medication orders in front of you for those dates? No, no. I mean, that's where they say is when it was ordered, but do you have the actual order issued as to when the medications was started and stopped?

Q     Dr. Platz can only issue orders. So the administration record is not his responsibility. Would you acknowledge that, right? He's not the one who shows up at the cell and gives you your meds, right?

A     Right.

Q     He's a doctor. All he does is write the order and somebody either follows it or they don't, right?

A     Right.

Q     So if you acknowledge all of these things you've just testified to but you didn't get your medication anyway, that wouldn't fall on Dr. Platz, right?

A     Right.

Q     I don't have any other questions for you. Thank you.

A     All right."

<u>Deposition of Christopher Michael Johnson</u>, 64:8-70:18.

## II. STANDARD ON SUMMARY JUDGMENT

Summary judgment is the "put or shut up" moment in a lawsuit, when a plaintiff must show what evidence he has that would convince a trier of fact to accept his version of events. <u>Koszola v. Board of Education of the City of Chicago</u>, 385 F.3d 1104, 1111 (7th Cir. 2004). It is

appropriately granted if the movant demonstrates through evidence designated to the court (i.e. pleadings, depositions, answers to interrogatories, admissions on file, and affidavits) that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.  *See,* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); Reid v. Norfolk & Western Ry. Co., 157 F.3d 1106, 1110 (7th Cir. 1998); Fed.R.Civ.P. 56(c).

Once the movant has met this burden, the non-movant must set forth specific facts demonstrating that a genuine issue of material fact exists for trial and may not rely upon mere allegations or denials of the pleadings.  *See,* Wollin v. Gondert, 192 F.3d 616, 620-621 (7th Cir. 1999); Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1031 (7th Cir. 1998); Fed.R.Civ.P. 56(e).  In determining whether a genuine issue of material fact exists, the court considers the evidence in the light most favorable to the non-movant. *See,* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of some factual dispute does not defeat a motion for summary judgment. "The requirement is that there is a genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 US 242, 248, 106 S.Ct.2505, 2510, 91 L.Ed.2d 202 (1986). For a fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the non-moving party." Id.

Courts are "not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." Johnson v. Cambridge Indus., 325 F.3d 892, 898 (7th Cir. 2003) Summary judgment is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgment must be granted. Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994), *affirmed*, 115 S. Ct. 2151 (1995).

III.  DISCUSSION

In order to demonstrate a cognizable claim against Dr. Platz based on the alleged violation of Mr. Johnson's Eighth Amendment rights, Mr. Johnson must demonstrate that Dr. Platz acted with deliberate indifference to Mr. Johnson's objectively serious medical needs.  Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002).  This inquiry generally has two components, an objective component and a subjective component:

> "The objective aspect of inquiry concerns the [inmate's] medical condition; it must be an injury that is objectively, sufficiently serious.  A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.
>
> Even if the plaintiff satisfies this objective component, he must also tender sufficient evidence to meet the subjective prong of this inquiry. In particular, plaintiff must establish that the relevant official had a sufficiently culpable state of mind, deliberate indifference to the health or safety [of the inmate].  Evidence that the official acted negligently is insufficient to prove deliberate indifference.  Rather, as we have noted, 'deliberate indifference' is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred."
>
> Id. (Internal citations and quotations omitted).

There is an additional layer of inquiry when the defendant is a medical professional like Dr. Platz:

> "When a prison medical professional is accused of providing *inadequate* treatment (in contrast to *no* treatment), evaluating the subjective state-of-mind element can be difficult. This is so because a medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances. This Court will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional

>judgment. It's clear that evidence of medical negligence is not enough to prove deliberate indifference. So without more, a mistake in professional judgment cannot be deliberate indifference."
>
>Spears v. Wexford Health, 2019 WL 1255529, at *6-*7 (S.D. Ind. 2019)(internal citations and quotations omitted).

In this case, there is *no* evidence that Dr. Platz's treatment was such a significant departure from accepted practice that no minimally competent physician would have acted similarly. Indeed, Dr. Platz discussed Mr. Johnson's complaints at each visit and provided treatment for the symptoms that warranted treatment. *See*, Affidavit of Alexander Pleszynski-Platz, M.D., ¶¶ 5- 7. There is no evidence that Dr. Platz even made a "mistake in profession judgment," let alone evidence that he was deliberately indifferent to a serious medical need. The only evidence is that Dr. Platz's treatment was within the accepted standard of care for general practice physicians in Indiana. Affidavit of Alexander Pleszynski-Platz, M.D., ¶9.

This Court held recently that even when medical providers disagree, the treating physician is entitled to deference in his medical choices and accordingly entitled to summary judgment. In Spears v. Wexford Health, 2019 WL 1255529, (S.D. Ind. 2019), the plaintiff, Mr. Spears was incarcerated at Putnamville Correctional Facility (Putnamville). While at Putnamville, one physician recommended that Mr. Spears undergo a selective nerve root injection on his second and fifth lumbar nerve to address chronic back pain. Two months later Mr. Spears received medical care from a second physician, who referred Mr. Spears for an SNRI. That second physician opined that the pain may be coming from Mr. Spears's fourth or fifth lumbar nerve or his first sacral nerve. Spears v. Wexford Health, 2019 WL 1255529, *3-*4(S.D. Ind. 2019).

While Mr. Spears was waiting for this procedure to occur, he was transferred to Pendleton, where the defendant, a third physician (Dr. Howe), was to perform the SNRI. Although Mr. Spears thought the procedure should target the fifth lumbar nerve, Dr. Howe concluded that Mr. Spears's

pain likely originated from the fourth lumbar nerve. Dr. Howe performed the SNRI on the fourth lumbar nerve in Mr. Spears's back. Mr. Spears sued Dr. Howe for deliberate indifference. Id at *4-*5.

This Court granted Dr. Howe's Motion for Summary Judgment, analyzing the case as follows:

> "The undisputed facts of this case establish that Dr. Howe was not deliberately indifferent to Mr. Spears's serious medical needs. According to the medical records submitted by Mr. Spears, three different doctors evaluated his back pain, and all three doctors reached similar, yet slightly different, conclusions as to the cause of the pain. First, Dr. Spanenberg recommended an SNRI for the second and fifth lumbar nerves. Dr. Madsen also recommended an SNRI, but he opined that the problem area was likely the fourth or fifth lumbar nerve or the first sacral nerve. After evaluating Mr. Spears on November 1, 2017, Dr. Howe, a specialist in pain management, concluded the SNRI needed to target the fourth lumbar nerve.
>
> Under these facts, Dr. Howe is entitled to deference on his treatment decision. He evaluated Mr. Spears's complaints of pain, and he exercised medical judgment as to the location of the pain. Although Dr. Howe's conclusion about the location of the pain differed from Dr. Spanenberg's conclusion, disagreement between two medical professionals about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."

Id. at *7-*8 (internal citations omitted).

In this case, there is not even a disagreement between medical providers. When Mr. Johnson received medical attention from Dr. Platz, Dr. Platz addressed Mr. Johnson's issues, including ordering pain medication. Affidavit of Alexander Pleszynski-Platz, M.D., ¶¶ 5- 7.

In such a circumstance, there can be no finding that Dr. Platz violated Mr. Johnson's Eighth Amendment rights.  Summary judgment is appropriate.

      **B.**      **Because There Is No Viable Federal Claim,
All Remaining State Law Claims Should Be Dismissed**

Once a district court has dismissed all claims over which it has jurisdiction, it may decline to exercise supplemental jurisdiction over pendant state law claims. 28 U.S.C. § 1367 (c) (3), Wright v. Associative Insurance, 29 F.3d 1244, 1250 (7th Cir. 1994). The Court of Appeals for the Seventh Circuit has frequently noted that the general rule is to dismiss supplemental state claims when the accompanying federal claims are dismissed prior to trial. Kennedy v. Schoenberg, Fisher and Newman, LTD, 140 F.3d 716, 727 (7th Cir. 1998). Thus, because there are no viable federal claims, all supplemental state law claims, to the extent any such claims exist, should be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, the defendant, Dr. A. Platz, requests that the Court enter summary judgment in his favor, against the plaintiff, and for all other just and proper relief in the premises.

                            Respectfully submitted,

                            CARSON LLP

                            By: */s/ Jeremy M. Dilts*
                                  Jeremy M. Dilts/#22335-49
                                  Attorney for Defendant
                                  Dr. Alex Platz

5010 N. Stone Mill Drive, Suite 100
Bloomington, Indiana 47408
Telephone: (812) 333-1225

**CERTIFICATE OF SERVICE**

      I certify that on the 3rd day of February, 2020, a copy of the above and foregoing document was filed electronically. A copy of this filing will be e-mailed to the following through the Court's electronic filing system:

| | |
|---|---|
| Carol Dillon<br>Christopher Andrew Farrington<br>Nathan Aaron Pagryzinski<br>BLEEKE DILLON CRANDALL, P.C.<br>carol@bleekedilloncrandall.com<br>drew@bleekedilloncrandall.com<br>nathan@bleekedilloncrandall.com | Nicholas G. Brunette<br>REMINGER CO LPA<br>nbrunette@reminger.com |

A copy of this filing was mailed to:

Christopher Johnson – #795224
Marion County Jail
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204

                                                    s/ Jeremy M. Dilts
                                                    Jeremy M. Dilts