UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02165-JPH-MPB |
| | ) | |
| BURTON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND
DIRECTING ENTRY OF FINAL JUDGMENT**

During a shootout in December 2017, an officer of the Indianapolis Metropolitan Police Department shot plaintiff Christopher Michael Johnson in the abdomen and heel. Shortly after sustaining the injury, Mr. Johnson was booked into the Marion County Jail. He filed this suit alleging that Jail medical staff have provided unconstitutionally deficient treatment for the pain from his heel injury. The third amended complaint, dkt. 49, is the operative complaint.

On December 30, 2019, more than a year after filing this action, Mr. Johnson moved for a preliminary injunction. All parties have moved for summary judgment.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570

F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). The Court will consider each party's motion individually to determine whether that party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 324).

## II. Facts

On December 13, 2017, Mr. Johnson was treated at Eskenazi Hospital for multiple gunshot wounds, including one to the left heel. Dkt. 145-1 at 9 (medical records). Mr. Johnson underwent surgery for some of his injuries, but not for the heel. Instead, an orthopedic specialist recommended a boot. *Id.* In early January 2018, Mr. Johnson was discharged and taken to the Marion County Jail.

2

Jail staff performed an initial medical screening on January 3, 2018. *Id.* at 96. Medical staff member Dr. Buller prescribed Norco, a narcotic pain medication, for 14 days. *Id.* at 105. On January 4, Mr. Johnson was admitted to the Jail infirmary. *Id.* at 106−10. He was wearing a boot on his left heel. *Id.* at 110.

On January 5, Dr. Buller performed a history and physical exam. *Id.* at 114−16. Dr. Buller ordered daily dressing changes and recommended that Mr. Johnson be as active as possible. *Id.* at 116. Dr. Buller also ordered a follow-up exam with an orthopedic specialist. *Id.*

Mr. Johnson left the infirmary on January 22, 2018, and his wounds had healed significantly. Dkt. 145-1 at 201 (discharge summary). Dr. Buller had prescribed Mr. Johnson Norco—a combination of hydrocodone and acetaminophen—through the end of January and ibuprofen through mid-February. Dkt. 145-1 at 180−81.

On January 26, 2018, Mr. Johnson saw an outside orthopedic specialist, Dr. Brian Mullis, at Eskenazi. Dkt. 145-1 at 214. Dr. Mullis recommended that Mr. Johnson continue non-weightbearing status on his left foot and follow up in 4 to 6 weeks. *Id.* at 216.

On February 13, 2018, Mr. Johnson filed a healthcare request form complaining about lack of pain medication. Dkt. 145-1 at 257. The next day, Dr. Buller examined Mr. Johnson and noted that Mr. Johnson's left foot was still in pain but was healing well. Dkt. 145-1 at 254. Dr. Buller ordered a 21-day Norco prescription. *Id.* at 253.

On March 5, 2018, Mr. Johnson saw orthopedic nurse practitioner Kathryn Stahl at the Eskenazi Orthopedic Clinic. Dkt. 145-1 at 277. NP Stahl recommended that Mr. Johnson continue wearing his boot while not sleeping or bathing. *Id.* She noted his ongoing pain concerns but made no specific recommendations. *Id.*

On March 18, 2018, Mr. Johnson filed a healthcare request form asserting that his pain medication prescription had ended—though he was still receiving ibuprofen. Dkt. 145-1 at 299, 304. He also threatened a federal lawsuit. *Id.* at 304. He filed a similar healthcare request form on March 22. *Id.* at 309.

On March 28, 2018, defendant NP Stacy Shultz treated Mr. Johnson at a chronic care visit for hypertension and pain management. Dkt. 145-1 at 320−23. At Mr. Johnson's request, NP Schultz ordered crutches instead of a walker to help his mobility. *Id.* at 323. Mr. Johnson complained of throbbing pain in his left heel at night, and NP Shultz ordered Tramadol, a narcotic-like pain reliever, for 14 days until Mr. Johnson's next follow-up appointment with his orthopedic surgeon. *Id.*

On April 13, 2018, Mr. Johnson had a follow-up appointment with orthopedic NP Stahl at Eskenazi Clinic. Dkt. 145-1 at 349−53. NP Stahl advised that Mr. Johnson could be weightbearing as tolerated on his left foot. *Id.* at 352. NP Stahl also wrote a prescription for a gel heel pad to cushion Mr. Johnson's left heel while walking. *Id.* NP Stahl recommended continuing Mr. Johnson's current pain medications and requested to see Mr. Johnson in 2 to 3 months. *Id.*

Also on April 13, 2018, Mr. Johnson filed a healthcare request form asking for pain medication, noting he was having trouble sleeping due to pain. Dkt. 145-1 at 346.

On April 18, 2018, Dr. Buller ordered one more month of Tramadol at bedtime for pain management. Dkt. 145-1 at 362.

On April 29, 2018, Mr. Johnson filed a healthcare request form asking to switch pain medications and noting that the orthopedic specialist at Eskenazi Clinic told him that he likely would continue to experience chronic pain. Dkt. 145-1 at 377.

On May 6, 2018, Mr. Johnson filed a healthcare request form asking for a gel heel pad. Dkt. 145-1 at 376.

On May 8, 2018, NP Shultz discussed Mr. Johnson's continued complaints of pain with orthopedic NP Stahl from Eskenazi Clinic. Dkt. 145-1 at 392. NP Stahl explained that Mr. Johnson was healing better than his orthopedic specialists had expected. *Id.* The NPs agreed on a medication regime of ibuprofen and Cymbalta (duloxetine) to help with nerve pain, and NP Shultz ordered both medications. *Id.*

On May 10, 14, and 16, 2018, Mr. Johnson submitted healthcare request forms regarding his pain medication. Dkt. 145-1 at 380, 386−87.

On May 16, 2018, NP Shultz met with Mr. Johnson to discuss his complaints of nerve pain. Dkt. 145-1 at 399−400. NP Shultz explained the outside NP's recommendation to try Cymbalta and ibuprofen. *Id.* at 400. Mr. Johnson expressed concerns with side-effects from Cymbalta, and NP Shultz agreed to discontinue the Cymbalta and ordered an increased dose of Nortriptyline (Pamelor) instead, in conjunction with the Ibuprofen. *Id.* NP Shultz also informed Mr. Johnson that the gel heel inserts she ordered were still on back order and that she had instructed an administrative assistant to pick up some gel heel pads from a local drug store. *Id.* Mr. Johnson agreed with this treatment plan. *Id.*

On May 30, 2018, Mr. Johnson filed a healthcare request form asking for Norco at night "to help take the edge off." Dkt. 145-1 at 406.

On June 5, 2018, NP Shultz spoke with Mr. Johnson during rounds in the cell block. Dkt. 145-1 at 408. Mr. Johnson reported that he was able to walk without his boot, but it was difficult to keep his gel heel pad in his clog-style shoes. *Id.* NP Shultz instructed Mr. Johnson that his family could bring shoes for him to wear with the gel heel pad. *Id.* NP Shultz also informed

Mr. Johnson that he had an upcoming appointment with his orthopedic specialist. *Id.* Finally, NP Shultz counseled Mr. Johnson that his current dose of nortriptyline and ibuprofen were appropriate, and that due to the nature of his heel injury, he was always going to have some pain. *Id.*

On June 18, 2018, Mr. Johnson filed a healthcare request form asking for "Tylenol-3s." Dkt. 145-1 at 420. NP Shultz informed Mr. Johnson that he would no longer receive narcotics for pain because his fracture was "well healed" and the injury was more than 6 months old. *Id.*

On July 3, 2018, Mr. Johnson was provided compression socks, at his request, to minimize swelling in his foot. Dkt. 145-1 at 423−24.

On July 13, 2018, Mr. Johnson met with Dr. Nathan Bowers, an orthopedic surgeon at Eskenazi Clinic. Dkt. 145-1 at 441−43. Dr. Bowers recommended that Mr. Johnson wean out of his walking boot and he counseled Mr. Johnson that he would likely experience some pain in his left heel for the rest of his life due to the nature of his injury. *Id.* at 442. Dr. Bowers advised that his goal was to control Mr. Johnson's pain with over-the-counter pain medications, such as Advil, Tylenol or Ibuprofen. *Id.* Dr. Bowers recommended Ibuprofen 800 mg three times daily, as well as a prescription for gabapentin (Neurontin) 300 mg three times daily. *Id.* Mr. Johnson filed healthcare request forms regarding pain medication on July 13, 15, and 16. On July 18, defendant Dr. Burton ordered a 30-day prescription of Norco. Dkt. 145-2 at 3. On July 19, that prescription was cancelled, and NP Yolanda Gonzales ordered gabapentin and ibuprofen as recommended by Dr. Bowers. Dkt. 145-2 at 6, 9.

On July 26, 2018, Mr. Johnson filed a healthcare request form requesting an increased dosage for his medication. He did not specify which medication. Dkt. 145-2 at 16. He filed another healthcare request form complaining that he was not receiving Neurontin as recommended. Dkt. 145-2 at 17. He received a pair of gel heel cups in the Jail clinic on July 27. *Id.* at 18.

On July 27, 2018, defendant Dr. Alexander Pleszynski-Platz issued Mr. Johnson a five-day Norco prescription.

On August 2, 2018, Mr. Johnson filed another request for pain medication. Dkt. 145-2 at at 30. On August 3, Dr. Pleszynski-Platz counseled Mr. Johnson that opioids were not indicated for his chronic ankle pain because his wounds were well healed. Dkt. 145-2 at 29. Dr. Pleszynski-Platz ordered Tramadol 50 mg twice daily for breakthrough pain, and recommended Tylenol and ibuprofen for chronic discomfort. *Id.* Mr. Johnson accepted this plan. *Id.*

On August 5, 2018, Mr. Johnson filed a healthcare request form complaining that his current pain medication was "not really working for [him]." Dkt. 145-2 at 32.

Sometime in August 2018, Mr. Johnson wrote a letter demanding "pain and nerve" medication, not just nerve medication. Dkt. 145-2 at 35 ("2 Narcos 4 times a day!"). He threatened to amend his complaint in this action to add additional defendants if he did not receive the demanded medicine. *Id.*

On August 13, 14, 18, 22, 23, and 29, 2018, Mr. Johnson filed healthcare request forms asking for an increased dosage of Neurontin, for the narcotic Roxicodone, or for both. Dkt. 145-2 at 45, 50−51, 55, 61, 71−72.

On August 31, 2018, NP Shultz examined Mr. Johnson. Dkt. 145-2 at 76−78. Mr. Johnson again asked for an increased dosage of Neurontin and for Roxicodone. *Id.* at 77. Mr. Johnson advised that he could walk on his left foot, and he requested a cane instead of crutches. *Id.* NP Shultz counseled Mr. Johnson to use only one crutch, as there were no canes available. *Id.* Mr. Johnson was later provided a cane on October 31, 2018. Dkt. 145-2 at 141. NP Shultz also counseled Mr. Johnson that the pain management recommendation of his orthopedic specialist was gabapentin and an over-the-counter pain medication, not opioid medication. Dkt. 145-2 at 77. NP

7

Shultz discussed her concern with continuing Mr. Johnson's ibuprofen due to the risk of gastrointestinal side-effects, ordered an increased dose of gabapentin, and ordered Meloxicam for pain relief to replace ibuprofen. *Id.*

On September 14, 2018, NP Shultz examined Mr. Johnson for continuing complaints of pain in his left ankle. Dkt. 145-2 at 90−91. Mr. Johnson stated that Meloxicam was not helping his pain, and he requested Roxicodone, which was not an appropriate medication to treat Mr. Johnson's chronic pain. *Id.* at 91. NP Shultz noted that Mr. Johnson walked up and down his cell block without crutches. *Id.* at 90. NP Shultz also noted that she discussed with mental health staff the possibility of starting cognitive behavioral therapy or biofeedback therapy to supplement Mr. Johnson's pain medication, but the mental health staff was not equipped to provide those therapies *Id.* NP Shultz discontinued Mr. Johnson's Meloxicam at his request and increased his gabapentin to 800 mg three times daily, as Mr. Johnson reported some relief with gabapentin. *Id.* at 91. NP Shultz also ordered Ibuprofen twice daily. *Id.*

On September 19, 2018, NP Shultz referred Mr. Johnson to a pain management doctor at Eskenazi Hospital, but the doctor later refused to take on Mr. Johnson as a patient because he was an inmate. Dkt. 145-2 at 113.

On October 1, 2018, NP Shultz treated Mr. Johnson. Dkt. 145-2 at 106. NP Shultz counseled Mr. Johnson that opioid use was not indicated for the treatment of his chronic pain due to the risk of tolerance and addiction. *Id.* NP Shultz ordered a crutch to reduce the weight on Mr. Johnson's left heel and encouraged Mr. Johnson to walk on his left foot. *Id.* at 107. Finally, NP Shultz ordered Mr. Johnson a foot soak basin, per his request, so that he could soak his foot, but NP Shultz counseled Mr. Johnson that soaking his foot in warm water would likely increase

swelling which could worsen his pain, and that he would likely have some intermittent swelling in his left heel for the rest of his life due to his traumatic injury. *Id.*

On October 12, 2018, NP Stahl treated Mr. Johnson at Eskenazi Hospital. Dkt. 145-6 at 4. NP Stahl concluded that an EMG test on Mr. Johnson was normal but acknowledged, "We do not have a reliable test for calcaneal [(heel)] sensory nerves." *Id.* As for treatment, NP Stahl noted, "We will write for a cane if [patient] feels that it is necessary and/or beneficial" and that "[t]he jail may titrate his gabapentin for pain control." *Id.*

On October 17 and 21, 2018, Mr. Johnson submitted healthcare request forms requesting a cane instead of a crutch and asking for stronger pain medication. Dkt. 145-2 at 133, 135. On October 23, NP Shultz advised Mr. Johnson that no canes were available, that his gabapentin had already been increased twice, and that additional gabapentin was not indicated. Dkt. 145-2 at 134.

On November 7, 2018, Mr. Johnson was treated by Dr. Christopher James, a neurologist at Eskenazi, for his chronic left foot pain. Dkt. 145-6 at 5−9. Dr. James noted that Mr. Johnson had full strength and full range of motion in his left foot. *Id.* at 8. He recommended physical therapy and topical pain-relieving cream. *Id.* at 5, 9.

Defendant Dr. Rohana was not involved in Mr. Johnson's medical care before examining him on November 13, 2018. Dkt. 145-1, ¶ 8 (Rohana affidavit). At this examination, Dr. Rohana noted Dr. James's recommendations for physical therapy and an anesthetic cream. Dkt. 145-2 at 155. Dr. Rohana ordered both and planned to wean Mr. Johnson from Neurontin to see if the local anesthetic cream was effective at reducing Mr. Johnson's pain. *Id.*

On December 3, 2018, Dr. Rohana treated Mr. Johnson. Dkt. 145-2 at 172−76. Mr. Johnson "insist[ed]" on Neurontin instead of ibuprofen for pain management and reported that his topical

pain medication was not effective. *Id.* at 174. Dr. Rohana discontinued Mr. Johnson's ibuprofen and topical pain medication and ordered Neurontin 300 mg twice daily for 14 days, to be reassessed after Mr. Johnson saw his orthopedic specialist. *Id.* at 176.

On December 7, 2018, Mr. Johnson was treated by NP Joseph Hutchison at Eskenazi. Dkt. 145-2 at 181−89. NP Hutchison recommended continuing gabapentin and directed that the jail may increase Mr. Johnson's gabapentin up to 1200 mg 3 times daily, which is the maximum recommended dose of gabapentin. *Id.* at 183 ("The facility may increase his gabapentin up to 1200 mg three times daily."); dkt. 145-1, ¶ 12 (Rohana affidavit) (3600 mg is maximum daily dose of gabapentin). NP Hutchison also recommended continuing Naproxen 500 mg twice daily. Dkt. 145-2 at 183. Finally, NP Hutchison discussed surgery to remove a bone fragment in Mr. Johnson's left heel, but Mr. Johnson chose to defer surgery until his release from jail. *Id.*

On December 12, 2018, Dr. Rohana followed up with Mr. Johnson following his appointment with his orthopedic specialist. Dkt. 145-2 at 192−93. At the specialist's recommendation, Dr. Rohana ordered Naprosyn and planned to increase Mr. Johnson's gabapentin gradually. *Id.* at 193. On December 21, 2018, Dr. Rohana increased Mr. Johnson's gabapentin from 900 mg daily to 1200 mg daily. Dkt. 145-2 at 200. Dr. Rohana did not increases Mr. Johnson's Neurontin prescription to the maximum dose, in part because the drug has psychoactive effects and a high potential for abuse, especially in a correctional setting. Dkt. 145-1, ¶ 12.

On January 3, 2019, NP Shultz treated Mr. Johnson. Dkt. 145-2 at 222−23. Mr. Johnson reported that the gabapentin was helping, but it was more effective when paired with Naproxen. *Id.* at 223. NP Shultz ordered Naproxen at Mr. Johnson's request and instructed Mr. Johnson to

submit a request form for any further concerns. *Id.* Also on January 3, Mr. Johnson's gabapentin daily dosage was increased to 1800 mg.

On January 22, 2019, Dr. Rohana treated Mr. Johnson. Dkt. 145-2 at 239−40. Dr. Rohana renewed Mr. Johnson's gabapentin for 10 days and planned to renew again in 10 days. *Id.*; *see also* dkt. 145-2 at 244 (renewing for 30 days on February 5, 2019). The prescription was increased to 2100 mg per day on February 24. Dkt. 145-2 at 254−56.

On March 27, 2019, Dr. Rohana examined Mr. Johnson, who requested orthopedic shoes to help with his chronic left ankle pain. Dkt. 145-2 at 290−91. Mr. Johnson told Dr. Rohana that he had orthopedic shoes at home, and Dr. Rohana advised Mr. Johnson that his family could bring the shoes to the jail. *Id.* at 291.

On April 9, 2019, NP Schultz removed all orders for Mr. Johnson's medical equipment. Dkt. 145-2 at 316. Custody officers notified medical staff that Mr. Johnson had assaulted another inmate with his cane, so the cane was confiscated. *Id.* NP Shultz had observed Mr. Johnson walking without his cane, without observable signs of foot or ankle pain, before and after the cane was confiscated. Dkt. 145-3, ¶¶ 23−24 (Schultz aff.). And Mr. Johnson did not wear his gel heel pad when he visited the clinic. Dkt. 145-2 at 316.

On April 10, 2019, Dr. Rohana treated Mr. Johnson. Dkt. 145-2 at 319−20. Mr. Johnson's gabapentin prescription by this date was 2400 mg per day. *Id.* at 320. He had full range of motion in his left ankle and 5/5 strength with minimal pain. *Id.* His gait and reflexes were normal. *Id.* Dr. Rohana offered a numbing cream to assist in pain management and increased Mr. Johnson's dose of Naprosyn (Naproxen) to 500 mg twice daily. *Id.*

On June 25, 2019, Mr. Johnson was transferred from the Marion County Jail to the Indiana Department of Correction, and Defendants had no further involvement with Mr. Johnson's medical

care until about December 20, 2019, when Mr. Johnson was transferred back to the Marion County Jail. *See* dkts. 100, 134.

Mr. Johnson acknowledges that defendant Roxanne Mann was not authorized to make any treatment decisions—she was a certified nursing assistant—but he complains that she told him sometimes that he would not be prescribed gabapentin. Dkt. 145-5 at 13−14 (Johnson dep.).

### III. Defendants' Motions for Summary Judgment

Because Mr. Johnson was a pretrial detainee for most of the time he spent in custody at Marion County Jail, the Fourteenth Amendment governs his claim. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). To prove that medical treatment violates the Fourteenth Amendment, a plaintiff must show requires a showing (1) that the defendant acted "purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" and (2) that the defendant's conduct was objectively unreasonable. *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018); *see Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). Mere negligence "is insufficient to support a claim for inadequate medical care under the Fourteenth Amendment." *McCann*, 909 F.3d at 887.

The Court will consider two defendants individually before turning to the remaining defendants' conduct.

### A.  Ms. Mann

Mr. Johnson alleged that Ms. Mann "knew [he] had a permanent injury and refused to prescribe [him] a strong enough pain medication." Dkt. 49 at 2. But the evidence demonstrates that Ms. Mann had no authority to prescribe or deny Mr. Johnson pain medication. In his deposition, Mr. Johnson explained that Ms. Mann told him to calm down and that he "ain't getting [gabapentin]."  Dkt. 145-5 at 14. No reasonable juror would find based on this statement that

Ms. Mann—a nurse assistant who had no authority to make decisions about Mr. Johnson's medical treatment—prevented him from receiving the pain medication he thinks he should have gotten. Accordingly, Ms. Mann is entitled to judgment as a matter of law.

**B.  Dr. Burton**

Mr. Johnson alleged that Dr. Burton "knew [he] had a permanent injury and refused to prescribe [him] a strong enough pain medication." Dkt. 49 at 2. But the record shows that Dr. Burton treated Mr. Johnson just one time relevant to Mr. Johnson's complaint. On July 18, 2018, after Mr. Johnson refused a different medication, Dr. Burton ordered him a 30-day prescription of Norco. Dkt. 145-2 at 3. Mr. Johnson does not complain about the Norco prescription, and he did not ask Dr. Burton to prescribe him any medication (Norco or otherwise). On July 19, Dr. Burton's Norco prescription was cancelled, and NP Yolanda Gonzales ordered gabapentin and ibuprofen as recommended by an outside specialist. Dkt. 145-2 at 6, 9. There is no evidence that Dr. Burton cancelled the Norco prescription. *See* dkt. 145-5 at 12 (Mr. Johnson agreeing that "according to the records," Dr. Burton did not cancel the prescription). No reasonable juror would find based on this evidence that Dr. Burton's treatment of Mr. Johnson was objectively unreasonable, so she is entitled to judgment as a matter of law.

**C.  NP Schultz, Dr. Rohana, and Dr. Pleszynski-Platz**

Mr. Johnson's primary allegations against NP Schultz, Dr. Rohana, and Dr. Pleszynski-Platz are that they failed to prescribe him enough pain medication, strong enough pain medication, or both. But the record shows that these defendants exercised their professional judgments and prescribed Mr. Johnson pain medication appropriate for his condition and the custodial setting.

Mr. Johnson was prescribed some form of hydrocodone—usually Norco—for the first two months after his admission to the Jail. He was then prescribed Cymbalta and Nortriptyline for several months, through July 2018, when he began several successive gabapentin prescriptions.

Mr. Johnson's response to the defendants' summary judgment motions states that he is allergic to Cymbalta and Nortriptyline, but he provides no evidence for that assertion, and he does not state when (or whether) the defendants became aware of the allergy.

Mr. Johnson also emphasizes a December 7, 2018, examination report from an offsite specialist. An attachment to the report titled "Your Medication List" instructs the patient to "Take 2 tablets (1,200 mg total) [of gabapentin] by mouth 3 (three) times a day." Dkt. 152-2 at 4. But the report itself instructs that Jail medical providers "*may* increase [Mr. Johnson's] gabapentin up to 1200 mg 3 times daily as needed." *Id.* at 3; *see also* dkt. 150-1 at 6 ("The jail may titrate [Mr. Johnson's] gabapentin for pain control."). Dr. Rohana, who treated Mr. Johnson shortly after the outside specialist, gradually increased Mr. Johnson's gabapentin dosage. But Dr. Rohana did not believe that the maximum dosage was clinically indicated, and he did not prescribe the maximum dosage because gabapentin has psychoactive effects and a high potential for abuse, especially in a correctional setting. Dkt. 145-1, ¶ 12.

Mr. Johnson also argues that the defendants were unreasonable for not providing him with a cane. Mr. Johnson requested a cane on August 31, 2018, and received a cane on October 31, 2018. Between the date of the request and when Mr. Johnson received the cane, the defendants recommended that he use a single crutch. That was objectively reasonable. *McCann*, 909 F.3d at 886. And it was objectively reasonable to take away the cane in April 2019 after receiving reports that Mr. Johnson had used it to attack another inmate, even if Mr. Johnson denies that version of events.

Finally, Mr. Johnson argues that the defendants unreasonably denied him physical therapy. He alleges that an October 12, 2018, note from NP Stahl at Eskenazi indicates he needed physical therapy for 99 months. Not so. The note recommends a *cane* for 99 months. Dkt. 152-2 at 11. The referenced physical therapy was merely to evaluate Mr. Johnson's need for a cane. Indeed, the physical therapist noted on October 12, 2018, "Patient does not require further physical therapy services." Dkt. 155 at 15.

In short, there is no evidence from which a reasonable juror could conclude that NP Schultz, Dr. Pleszynski-Platz, or Dr. Rohana's treatment of Mr. Johnson's heel pain was objectively unreasonable. These defendants are all entitled to judgment as a matter of law.

### IV. Plaintiff's Motions for Summary Judgment and Preliminary Injunction

For the same reasons that the defendants are entitled to summary judgment, Mr. Johnson is not. And because Mr. Johnson has shown no likelihood of success, his motion for preliminary injunction is also denied.

### V. Conclusion

The defendants' motions for summary judgment, dkts. [140], [144], and [147], are **GRANTED**. Mr. Johnson's motion for preliminary injunction, dkt. [133], motion for summary judgment, dkt. [150], and motion for court to make a ruling, dkt. [160], are **DENIED**. Mr. Johnson's motion for Court assistance, dkt. [168], is **DENIED** as moot.

Final judgment in accordance with this Order, and in accordance with the Court's November 18, 2019, order, dkt. [126], shall now issue.

**SO ORDERED.**

Date: 9/15/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

CHRISTOPHER MICHAEL JOHNSON
795224
MARION COUNTY JAIL
MARION COUNTY JAIL
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204

All Electronically Registered Counsel